The Court, Counsel, I am Brian Wendler, I'm here representing the appellants in this case, the plaintiffs. In this action, the District Court determined that the Illinois statute of limitations is applicable and on that basis granted summary judgment in favor of the defendants. The District Court, Honorable John Ross, in his order granting summary judgment, wrote that he felt it was slightly odd to apply the Illinois statute of limitations simply because the plaintiff woke up in an Illinois hotel room. Well, we wholeheartedly agree that it's not just slightly odd, but more than odd given the facts and circumstances of this case. This case is before the Court because the District Court determined as a matter of law plaintiff's claim is governed by the Illinois two-year statute of limitations simply because he happened to have the misfortune of waking up in a hotel room in Illinois after being routed that way by his employer to deliver a load of automobiles. Everything else in this case points to Missouri. The plaintiffs both reside in Missouri. The trailer itself was sold in Missouri. The trailer is the product, of course. Plaintiff's employer is headquartered in Missouri. Mr. Burdess filed his worker's compensation claim arising from this injury in Missouri. All of his medical treatment was in Missouri. He didn't go to any Illinois doctors. His medical diagnosis connecting the injury was made in Missouri. And most of his work, Mr. Burdess' work, was conducted in Missouri at the Winslow, Missouri, Terminal. But even if all of that is true, don't we still look to the borrowing statute? Isn't that why Judge Ross looked to that statute? Given, just as a factual matter, okay. Yes, Judge Kelly, that's exactly correct. And that's why I was getting to my next point. Judge Ross, in his order, specifically applied the Missouri borrowing statute to determine that Illinois statute of limitations would apply because in his order, this is on page nine of his opinion, he said two factors show that plaintiff knew while he was in the hotel that he had a potential cause of action. One, he called JCT, that's his employer, Jet Cooper Transport Company. He called JCT to, but he called JCT not because he was claiming an injury, but he called JCT because he had a load of cars to deliver. And he called them, let them know that he couldn't drive. And two, this is the second point of Judge Ross' order. Mr. Burdess, months later, told the doctor that the only thing I can think of that would cause his arm problems when he woke up with his arms paralyzed in the hotel room at 3 o'clock in the morning. The only thing he could think of that would cause that would be his work pulling down on the tie down bar on the ratchets to tighten these automobiles to the cars. But that was much later, that was not at the hotel room when he made that conclusion. No one ever asked Mr. Burdess months later why and how he came to that conclusion when he said that's the only thing I can think of. But Judge Ross in his order also noted that Mr. Burdess has another lawsuit or had another lawsuit against the same defendant represented by yours truly in the other case. And possibly he was told by his attorneys about all these industry reports that talk about the high force levels of the control ratchet systems. And the A circuit opinions that deal specifically with the high force levels on the ratchet systems and how those ratchet related injuries cause shoulder problems. It could be that he spoke to his lawyer, it could be he spoke to his co-workers. It could be, who knows, maybe he wrote it somewhere. But for the judge to determine that those two factors causes the judge to believe Mr. Burdess had a reasonable basis to determine the injury. He had a cause of action when he woke up in that hotel room. The only way that makes sense is if the judge is looking at the evidence in the light most favorable to the defendant. Look, counsel, let me ask you a related question from a slightly different angle. In order to take this away from a judicial determination and get it to a jury, there has to be evidence in the record from which a different conclusion could be made as to when the statute of limitations started to run. What would you point to in the record that would meet that requirement? There are a myriad of factors, and you're correct, your honor. The standard is when there is contradictory or differing conclusions that can be drawn from the evidence, it is a question of fact for the jury. So what would you point to? Okay, in this case, Mr. Burdess woke up with his arms paralyzed. The judge had to conclude that he knew when he woke up with his arms paralyzed that it had to be related to cranking on those ratchets. Personally, if I were to wake up in a hotel room with my arms paralyzed, I don't crank on ratchets. But my first reaction would be heart attack or some neurological disorder. So there's no evidence that Mr. Burdess, in fact, determined at that point in time that it was cranking on the ratchets that caused his arm problem. Now, months later when he talked to the doctor, yeah, that's when he came to that conclusion. But it could have been anything. You know, frequently truck drivers have carpal tunnel and other problems just from the steering wheel for driving for years. But just from saying that he woke up with arm paralysis, with numbness in his arms, that had to cause him to believe he had a cause of action against the trailer manufacturer, that's just a stretch. At very least, there's a possibility of contradictory or differing conclusions based on that alone. What does the concept of inquiry notice have to do with this analysis? What level of information does he have to have? Does he just have to be put on inquiry that maybe he ought to look into whether it could be job related? Well, in this case, given the circumstances of how he was injured, it could have been anything. But this is not a situation where he was cranking on the ratchets and it came and chopped his finger off. That would be easy. But this is a case where hours after going to bed, he wakes up in the hotel room and he can't move his arms. He's paralyzed. I guess the question is, are you required to inquire at that point? But yes, not at three o'clock in the morning, though. Counsel, what about the test, his own testimony about his previous medical care? I haven't heard you mention anything about that. He didn't remember, as I'm reading the depositions, if I'm reading them properly, but he didn't contest that the medical records showed that he had gotten treatment for what seemed to be group-related injuries. Why haven't you addressed that in whether a reasonably prudent person would be on notice? Isn't that relevant? At least help me understand why it's not. Well, I think it is relevant, Your Honor. But it is in the brief, and there were four or five different episodes of that. And that's why we laid them out in the brief so we'd have time for that. But for instance, the 2002 incident where he strained a shoulder when he was picking up a tie-down bar, the record actually shows no numbness in his arm for that one. He was returned to work full duty after one week with no treatment. 2007, the IME doctor noted a shoulder pain but doesn't even list the cause of what caused the shoulder pain. For all we know, he bumped it on the steering wheel or did it at home. 2008, BarnesCare, pain in the left forearm, hand, and elbow. And it's not the entire left arm, as defendants state in their brief, but it's the left forearm up to the elbow. And on that occasion, he was tying a cord together. I don't even know what that means, tying a cord together, but it wasn't cranking on the rack. So when you're going through all of these records, what I'm understanding your argument to be is, one, the nature of the injuries aren't the same as what he got in the hotel room, and two, they're not necessarily job-related, is that what you're saying? That is correct. And the defense has no expert whatsoever to connect any of those prior injuries to the injuries that are at issue in this case. And on an affirmative defense like a statute of limitations, that's the defendant's burden. It's their burden of proof on an affirmative defense. Counsel, what's the evidence in the record about the time period that elapsed between Mr. Bertus' last action with his tie-down bar and when he awoke in the hotel room? It was the same, April 5th or April 6th, whatever date it was, he stopped in McLean, Illinois, and went to the hotel room, and a few hours later he woke up and couldn't move. When did he last tie down and load? Oh, I'm sorry, he drove from Wentzville to McLean, Illinois. Where's that in the record? I'd have to get you a specific passage, but he went straight from Wentzville where he loaded. And presumably, is that when he loaded, was this a vehicle carrier? Car carrier. Yes. When he loaded the trailer, is that presumably when he aggravated or injured because of the tie-down bar? That was the last instance. I see I'm out of time, but may I finish? Go ahead. The claim in this case is a repetitive trauma and a specific trauma, so it's not limited to that one isolated occasion. It's a span of a period of years. What was that time span between the last using the tie-down bar and when he awoke in the hotel room? A matter of 12 hours, perhaps, an hour long it takes to get from Wentzville, Missouri, to McLean, Illinois. I'm sorry, I don't have a more definitive answer, but within 24 hours easily. I see I'm out of time, and I appreciate your consideration. Thank you. All right, counsel, if you will hold just a moment and let us prepare the lectern for you. Yes, Your Honor. All right. Good morning, Your Honors. Counsel. May it please the court, counsel. Your Honors, my name is Dan Carpenter, and I represent the Apolli Cattrell in this case. This case presents a perfect example of how the objective standard, the capable of ascertainment standard from Powell v. Chaminade, and the statutory purpose against forum shopping of 516.190 interact to properly bar a plaintiff's claim accruing elsewhere. It's important to note that there is no statutory language, much less any presumption in 516.190 in favor of Missouri citizens, whether injured abroad or otherwise. And to that end, the plaintiffs repeatedly focus on these Missouri connections, as Judge Kelly noticed, to attempt to make this some sort of restatement choice of law, most significant relationships test, and also to try to make this a subjective discovery test. Even in their brief, and even in the argument here, the plaintiff stated this was a two, open quote, defendants failed to provide any evidence indicating that plaintiff knew in Illinois that the numbness in his arms was attributable to the repetitive use of a Cattrell rig. But what the plaintiff knew is not the standard in Missouri, as that introduces the subjective discovery rule that was rejected. So counsel, let me ask you then, why would a reasonable person who had experienced this, never before experienced numbness during the night lasting several hours, why would they associate that with their work tying down Carlin? Well, Your Honor, that's, what happened in this case is this case is kind of a perfect example of how this standard can apply, and what happened was this court, the trial court denied the summary judge motion on a motion to reconsider based on one set of facts, which was that this just came out of nowhere in the middle of the night. And even in, I believe you were on the, Your Honor, on the Leavitt versus Merck panel, and you even cited, or the court cited the 2018 opinion from Judge Ross saying, well, just somebody just waking up in the middle of the night with numbness without more would not put a reasonable person on notice, inquiry notice to go, that there may be something to sue or somebody that they, that it may be attributable to. But after we did two and a half years of discovery, it turned out that the original idea that he had never had upper extremity injuries before, that he saw Dr. Emanuel, and he reported to Dr. Emanuel after he went from Illinois to Missouri to see a doctor. He reported to him that he had been having ongoing shoulder problems for five to six years. That was in Dr. Emanuel's records, and it was also in the plaintiff's testimony. He said, yeah, and he had to come back after a break at his deposition and say, you know, I've got all these medical records I've seen now, I had these issues before. Could a jury look at the same evidence and come to a different conclusion? Maybe he thought he was having a heart attack or a neurological problem. In this case, I don't think that they could. I think that the, what we look at is from a reasonable, a reasonable person in plaintiff's shoes, and what would they think? And the judge originally agreed with the plaintiffs in this one, but once he saw all the evidence, that you look at it objectively and that, yeah, I mean, he should have known. And it's, like I said, it's an objective standard, and when there are no issues of fact, which is what Judge Ross found, he said, look, you can't just, you know, as an issue of fact, so they didn't come back with any evidence in the record to create any genuine issue of material fact with regard to when and where it arose. And that's the issue here, is where did the statute accrue? You know, and here- You know, he can't move his arms. I think he was on the ground for an hour or more, just not able to get up, which I didn't see any of that in the medical record. Sort of, you know, I've got shoulder problems, my forearm is sore. You know, carpal tunnel wallage was referred to in the earlier argument. That seems like a pretty big difference in terms of the extent of the injury. Does that matter? I don't think it does, Your Honor, here. And why not? Why not? Because it's a, I think it's important to note that this is a capable of ascertainment standard. And the Missouri legislature, they gave their own choice of law provision in there, and it did not include any deference to Missouri citizens. It didn't include the type of injury. You know, it basically would be, given his past history and given that he had, was undisputed in the record that he had five to six years of prior shoulder issues that he reported to Dr. Emanuel, when that happened in that hotel room, that's when he was on inquiry notice. He, and it was capable of ascertainment. So. So it is inquiry notice to follow up on Judge Grah's question. Is it inquiry notice? Is that what you think the standard is? That's what, that's what it's been referred to analogously. I know this capable of ascertainment sounds kind of weird, but it is, you know, would it put a reasonable person, knowing what that plaintiff knew, having five to six years of shoulder injuries, having loaded the day before, having done manual labor for 20 years, loading cars, having had tie down bar injuries before, that it was reasonable for him at that time to have attempted to ascertain what the damages were. And so we can't have a situation where, let's say there were only one expert who could diagnose people, and he happened to be in Missouri. So everybody comes, they feel their symptoms, then they come to Missouri, under their argument you'd say, well, you can come and enjoy our, you know, lengthy five year statute of limitations because you came here to get diagnosed. The issue is, though, would an objectively reasonable person knowing what this plaintiff knew inquire and see if maybe there was something going on? And guess what? He did. But he could have done that in Illinois. There is no benefit or no presumption in favor of a Missouri citizen or a Missouri corporation. And quite frankly, here, this is unlike the Leavitt case where Judge Whipple in that case dismissed it. I think he may have converted it to a summary judgment motion, but based on just two articles that were newspaper articles, they didn't have a complete record, they didn't go through voluminous discovery, you know. And that's why Judge Ross here, he denied it to begin with, and then when, after a complete record, he found that there is no genuine issue of material fact, that the underlying circumstances that involve, you know, or that color whether this was what a reasonable person would do are undisputed. Well, counsel, what standard would a court apply to determine or to decide whether this was capable of ascertainment immediately in Illinois or a few hours later when he was in Missouri after he had time to think about, gosh, I've had injuries before, maybe this is related to my job? Well, I think what the statute and what the cases look at is it's an objectively reasonable standard. So what he, given the fact that he had a prior history of shoulder injuries, that he had reported a tie-down bar injury before, that that is the type of thing that, and that's the, you know, that's why the judge said below that it may seem kind of weird, but that's what the law is with regard to where your damages accrue or where you're capable of ascertainment. That is, under the choice of law provision of 516.190, that is where the statute of limitation applies, when it's capable of ascertainment. Otherwise, you're going to have the forum shopping that happened here. I mean, they filed a lawsuit for an accident that happened, I think, in 15, within the two-year statute of limitations in St. Clair County, Illinois, and then for an earlier accident in 2013, drove across the Mississippi and filed over here, taking advantage  of the limitations, and that is the exact purpose of the borrowing statute, is to prevent this type of forum shopping. Judge Ross below said on two occasions that he was suspicious of their motives in forum shopping, but he didn't have to, at the end of the day, he didn't have to hinge his opinion on that because of the developed record proved that it was objectively ascertainable in Illinois at that time. Counsel, this is a concern that I have about the case, and I wondered if it was really truly appreciated, and that's the nature of the work that this man did, and that it's hard work, that it's the kind of work where you do get, you get bumps and you get strains and you get pulls, and he has went to the doctor several times, not only for a shoulder complaint but for other things, so why, objectively, is an individual required to definitively attribute a particular problem with a particular action or particular involvement with a piece of equipment when you've got a whole record of physical issues that presumably are arising from the kind of work that this man did? I mean, it would be one thing if he were an accountant or a lawyer and he filed a case and suddenly his shoulder is immobile and he thinks, oh, wow, I jacked up my car yesterday and I had a lot of trouble with the jack, as opposed to someone like this who's engaged in hard, difficult manual labor and has a history of consulting a doctor for various issues. I think that that actually supports what the Missouri cases say, and they're talking about it's very specific about where the damages were capable of ascertainment, and that's where he was, was in Illinois. I think that actually because of his history and his physical manual labor job, that would actually put him as a reasonable person on more of a notice to inquire at that time. Does that answer your question? I'll accept that answer. I'm not sure it really satisfies my concerns, but it's well, I understand what you're saying. It's well presented. Okay. I'm out of time. Thank you, Your Honor. Thank you, Ms. Dandeside. And counsel, does he have any time left? His time had expired, Your Honor. All right. I think we have, we understand the arguments in the case and we appreciate the arguments today. It's been well argued and the case is submitted and we will strive to have an opinion ready in due course. Thank you. Do we have any other cases for this morning? We do not, Your Honor. All right. Very well. We will stand in recess until 9 o'clock tomorrow morning. Thank you. Don't hate me. I haven't had any coffee. Oh, I heard all about it and I knew when you were local that he's talking traffic. I am not. I am not. Thank you.